JAMES H. CUDDY, ADM'R FOR JOHN KELLY v. SARAH HORN, OWNER OF THE STEAMER "GARLAND," AND WM. K. PARCHER ET AL., OWNERS OF THE STEAM YACHT "MAMIE."

*Navigation—Passengers have no right to control public conveyances—Collisions—Joint liability for negligence—Limited Liability Act does not apply on streams connecting the lakes.*

The rule by which one who rides in a private conveyance is presumed to control or be identified with the driver and to have no right of action for any injury done him by a collision caused by the driver's negligence, cannot apply to passengers in public conveyances, such as railway cars or steamboats, even though they have chartered the conveyance.

The master of a vessel cannot relieve himself of responsibility for its safe management by surrendering its control to a charterer.

Where a passenger in a conveyance can have no control over those in charge of it, he cannot be held to be so identified with them as to be considered a party to their negligence.

Passengers on a steam-yacht chartered for their use, but not under their control in matters of navigation, have a right of action against its owners for injuries caused them by the negligent management of those in charge of it.

An act wrongfully done by the joint agency or co-operation of several persons, or done contemporaneously by them without concert, renders them liable either jointly or severally.

If a passenger upon one vessel is injured by its collision with another in consequence of the negligence of the officers of both, he has a right of action against them jointly, and it is for the jury to fix the liability where it belongs.

Where evidence tends to make out a case for the plaintiff, its force and effect is for the jury, and the Supreme Court will not attempt to review or weigh it.

The Limited Liability Act of Congress exempting ship-owners from personal liability for injuries caused by the negligence of those in charge of their vessels, does not apply to boats navigating streams connecting the Great Lakes.

Error to Superior Court of Detroit. Submitted June 14. Decided October 12.

Case.  Plaintiff brings error.  Reversed.

*Alfred Russell, James Caplis, Henry M. Campbell* and
*H. M. Duffield* for plaintiff in error.  The rule that a pas-
senger cannot recover for injuries to which the driver of his
conveyance contributed (*Thorogood v. Bryan* 8 C. B.
115; *Cattlin v. Hills* id. 123; *Prideaux v. Mineral Point*
43 Wis. 513; *Lake Shore, &c. R. R. v. Miller* 25 Mich.
274), does not apply to steam vessels which the passengers
do not control: *Lockhart v. Lichtenthaler* 46 Penn. St.
151; or railway trains, *Flint & Pere Marquette Ry. v.
Weir* 37 Mich. 111; *Chapman v. New Haven R. R.* 19 N.
Y. 341; *Colegrove v. N. Y. & N. H. R. R.* 20 N. Y. 492;
*Webster v. Hudson Riv. R. R.* 38 N. Y. 260; nor to street
cars: *Bennett v. N. J. R. R.* 36 N. J. L. 225; nor stage
coaches: *Turnpike Co. v. Stewart* 2 Metc. (Ky.) 119; nor
tug boats: *Perry v. Lansing* 17 Hun 34; the doctrine is
criticised in 1 Smith's Lead. Cas. 366; *Tuff v. Warman* 2 C.
B. (N. S.) 750; *Waite v. N. E. Ry.* El. Bl. & E. 728; *The Milan*
Lush. 403; *Hay v. La Neve* 2 Shaw Sc. App. 405; *Rigby
v. Hewitt* 5 Exch. 240; *Greenland v. Chaplin* id. 243; and
each case should be governed by its circumstances: *Daniels
v. Clegg* 28 Mich. 40; *East Saginaw R. R. v. Bohn* 27
Mich. 503; the administrator of a person drowned by the
collision of vessels has a right of action against the owners
of both vessels: *Cooper v. E. T. Co.* 75 N. Y. 116; *The
Washington and Gregory* 9 Wall. 513; *The Alabama and
Game-cock* 92 U. S. 695; *The Atlas* 93 U. S. 302; *The
New Philadelphia* 1 Black 62; *Sturgis v. Boyer* 24 How.
124; a private carrier of goods is liable for negligence: 2
Wait's Actions 6; a gratuitous steamboat passenger can
recover for negligence: *New World v. King* 16 How. 469;
so can a gratuitous railway passenger: *Railroad v. Derby*
14 How. 468; when there are doubtful or qualifying cir-
cumstances, the question of negligence must be left to the
jury: *New Jersey &c. Transp. Co. v. West* 32 N. J. L. 91;
*Weber v. N. Y. &c. R. R.* 58 N. Y. 451; *Ernst v. Hudson
&c. R. R.* 35 N. Y. 9; *Thurber v. Harlem R. R.* 60 N.

Y. 326; *West Chester R. R. v. McElwee* 67 Penn. St. 311; *Crissey v. Hestonville* 75 Penn. St. 83; *French v. Taunton R. R.* 116 Mass. 537.; *Craig v. N. Y. &c. R. R.* 118 Mass. 431; *Garland v. Young* 119 Mass. 150; *Catawissa R. R. Co. v. Armstrong* 49 Penn. St. 186; *Taber v. Delaware &c. R. R. Co.* 71 N. Y. 489; *Hawley v. N. Central R. R.* 17 Hun 115; *Houston &c. R. R. v. Randall* 50 Tex. 254; *Johnson v. Bruner* 61 Penn. St. 58; whether the facts be disputed or undisputed, if different minds may honestly draw different conclusions from them, the case should properly be left to the jury: *R. R. v. Stout* 17 Wall. 657; *Ireland v. O. H. & S. Plank Road Co.* 13 N. Y. 533; *Keller v. N. Y. C. R. R.* 24 How. 176; *McGrath v. Hudson &c. R. R.* 32 Barb. 144; *Gaynor v. Old Colony &c. R. R.* 100 Mass. 212; *State v. R. R.* 52 N. H. 529; *Beers v. Housatonuc R. R. Co.* 19 Conn. 566; *Vinton v. Schwab* 32 Vt. 612; *Penn. &c. Co. v. Bentley* 66 Penn. St. 30; *Stoddard v. St. Louis &c. R. R.* 65 Mo. 514; *Potter v. Chicago &c. R. R.* 46 Iowa 399; *Cumberland &c. Iron Co. v. Scally* 27 Md. 589; by whose fault a collision occurs is a question of fact: *Smith v. Condry* 1 How. 28; *Cooper v. Eastern Trans. Co.* 75 N. Y. 116; so is the existence of a chance of danger which will justify departure from the rules of navigation: *The Esther v. The Concordia* Holt's Rule of the Road 142; *The Amazon v. Osprey* id. 138; so is the risk of collision: *The Thames v. Stork* Jud. Com. P. C. 154; or whether the possibility of collision amounts to a risk: *The Newburgh v. The Oscar* Holt 233; so is the distance of the vessels apart: *Jane v. Great Eastern* Holt 170; and the rate of speed after approaching too closely: *The Milwaukee* Brown Adm. 313; *The Free State* id. 251: 91 U. S. 200; so is the fact of getting too near, as showing contributory negligence: *Kellogg v. N. Y. C. R. R.* 79 N. Y. 76; *R. R. Co. v. State* 45 Md. 229; *Lake v. Milliken* 62 Me. 40; *Haack v. Fearing* 5 Robert 528: 35 How. Pr. 459; *Sleath v. Wilson* 9 C. & P. 612; *Nav. Co. v. Hungerford* 6 G. & J. 291.

*Wisner & Speed* and *John J. Speed* for defendant owner of the " Garland " cited *Armstrong v. Lancashire etc. R. R. Co.* L. R. 10 Exch. 47; *Houfe v. Fulton* 29 Wis. 296; *Carlisle et ux. v. Sheldon* 38 Vt. 440; *Forks Township v. King* 84 Penn. St. 230; *Payne v. C. etc. R. R. Co.* 39 Iowa 523; Cooley on Torts p. 684; as to joint liability for collision: *Colegrove v. Harlem & N. H. R. R.* 6 Duer 419.

*Moore, Canfield & Warner* and *H. H. Swan* for defendants owners of the "Mamie." A passenger who contracts directly with the charterer of a vessel, knowing him to be the charterer, must look to him and not to the owners: 1 Pars. Ship. & Adm. 125; *Clendaniel v. Tuckerman* 17 Barb. 184; *Tuckerman v. Brown* id. 191; *Baker v. Huckins* 5 Gray 596; *Colvin v. Newberry* 1 Cl. & F. 283; *Winterbottom v. Wright* 10 M. & W. 109; persons cannot be made jointly liable for negligence unless they are in the relation of master and servant, or act in concert: Campbell on Negligence 55; Bigelow on Torts 319; 2 Hilliard on Torts 297; *Guille v. Swan* 19 Johns. 382; *Wall v. Osborn* 12 Wend. 39; *Williams v. Sheldon* 10 Wend. 655; *Bard v. Yohn* 26 Penn. St. 482; *Weakly v. Royer* 3 Watts 460; *Brooks v. Ashburn* 9 Ga. 297; *Parsons v. Winchell* 5 Cush. 592; *Campbell v. Portland Sugar Co.* 62 Me. 552; *Yeazel v. Alexander* 58 Ill. 261; where each acts for himself they are not jointly liable: *Wood v. Cobb* 13 Allen 58; *Armstrong v. L. & Y. Railway Company* L. R. 10 Exch. 47: 12 Eng. 508.

MARSTON, C. J. The following statement of facts taken from the briefs of counsel for the defendants is sufficiently full and accurate for a definite understanding and discussion of the legal questions raised.

The action was commenced by the plaintiff as administrator of the estate of John Kelley, deceased, to recover damages on account of his death caused by a collision between the steamer "Garland," of which the defendant Horn was owner, and the steam-yacht "Mamie," owned by the other defendants, on the Detroit river, July 22d, 1880. The decla-

ration alleged in substance that the Garland was going down the river upon a pleasure excursion, and the Mamie was coming up, returning from a pleasure excursion, and that Kelley was a passenger on the Mamie; that by failure of the master of the Garland to keep a proper lookout, and by his failure to give proper signals at the proper time upon the approach of said Mamie, as required by Rule 3 for the government of pilots, and by reason of the failure of the master of the Mamie to give the proper signals to indicate upon which side she would pass, until the vessels had approached so near that a collision was inevitable, and by reason of the failure of the owner and master of the Mamie to keep a proper lookout upon said Mamie, said vessels collided, and said Mamie sank, causing the death by drowning of said Kelley.

The defendant Horn and the other defendants filed separate pleas of the general issue. The owners of the Mamie also filed a plea in abatement, alleging that proceedings had been commenced and were then pending in the district court of the United States by them as owners of the Mamie for the purpose of taking advantage of the statute of the United States limiting the liability of vessel-owners in certain cases. And special notice of such proceedings was also given with the plea of the general issue.

A trial was had upon this plea, and a verdict, by direction of the court, rendered for the plaintiff thereon, and the trial thereupon proceeded upon the pleas of the general issue, and a verdict was rendered in favor of the defendants. The case comes here on writ of error, and the points relied upon by the defendants will be considered in order.

The position taken by the defendant Horn was, that the plaintiff's intestate was a passenger on the Mamie at the time of the alleged collision, and the Mamie having contributed to the collision, plaintiff's intestate must, in law, be held to have been so identified with those in charge of the yacht that he could not have recovered if he had survived, for an injury suffered by him occasioned by such collision, and that under the terms of the chartering or hiring of the yacht he could not have recovered for an injury so received.

It appeared that Rev. A. F. Bleyenberg had chartered the steam-yacht Mamie to carry a party of altar boys and others, twenty-one persons in all, and fourteen of them from eleven to fifteen years of age, from Detroit to Monroe and back, for which he was to pay twenty dollars, and that the yacht was in charge of the master and engineer thereof placed there by the owners. At the time of chartering the yacht it was stated that there would be about twenty persons to go on the trip, but no limit was placed upon the number, or as to the particular route to be taken, in going to and returning from Monroe.

It has not been and could not be claimed that young Kelley had any authority or control whatever over the master or engineer of the yacht, or that he could have changed or directed the movements of the yacht in even the slightest degree. And while Father Bleyenberg, undoubtedly, we may assume, could and did have charge and control of the yacht, as to the time of starting, the number of passengers and such like, yet as to the due and proper management of the vessel, the steam she should carry, the speed at which she should be run, the course she should take within certain limits, the rules she should observe in meeting and passing other vessels, the lights she should carry, in a word the laws and rules applicable to such craft while navigating the rivers and lakes, were matters over which he could not rightfully be permitted to have any control or direction whatever. These were matters which the master of the vessel could not legitimately turn over to the guidance or direction of any person who may have chartered the boat for a trip to and from a certain point. Had directions been given the master to run the yacht ashore, or upon a rock, or to run down upon and destroy a row-boat, or to not give or answer the necessary signals when approaching another vessel, or to not carry proper lights, clearly the master would have been under no obligations to obey such orders, and neither he nor the owners of the vessel could have justified such a departure from duty by setting up the authority or directions of Father

Bleyenberg therefor.    In this case it was the legal duty of the yacht to carry proper lights at night and to give and answer certain signals in due and proper time when approaching another vessel, and what the law had thus directed to be done could not be varied, changed or controlled by any person who may have chartered the vessel for the occasion. And where a person can rightfully have no voice or control, he cannot be held so identified with those in charge as to be considered a party to their negligence.    It seems to me that any other rule would but point out the way to owners of vessels in which they could violate all rules and regulations adopted to insure the safety of passengers without incurring any liability to them therefor.    The reason for holding a person riding in a private conveyance identified with the driver thereof, and therefore affected by the negligence of the latter, cannot fairly or justly be held applicable in cases like the present.    In the case of a private conveyance the driver is under the control and directions of the passenger, and if not, the latter may well decline to entrust his safety farther in such conveyance.    When, however, a person enters a public conveyance, and certainly a railroad train or a steamboat, he has no such control over the movements of either, and whether he may have chartered such conveyance for a special purpose or not, yet for a faithful observance of the rules of law enacted for the running or navigation thereof, he cannot be held responsible, in a case like the present, where the master is not his servant and is not subject to his directions or authority.

The authorities cited by counsel for plaintiff in error and which decline to follow *Thorogood v. Bryan*, 8 C. B. 115, should be followed in the present case.    The charterer in this case did not appoint the officers of the boat, but was himself, and those who accompanied him, under and subject to their power in the navigation of the vessel, and if they, thus controlling the movements of the Mamie while running, and representing the owners thereof, were guilty of negligence in the performance of their duties, those on

board have a remedy for injuries suffered in consequence thereof. See also *Covington T. Co. v. Kelly* 11 Am. Rep. 24.

It was next insisted that there was no joint liability on the part of the defendants. This question is not free from embarrassment, and upon a trial the danger is that each defendant is interested in endeavoring to throw all the blame upon the other, and perhaps attempt to prove acts of negligence not set forth in the declaration. In opposition to this it may be said that negligence caused a collision by which plaintiff's intestate was killed and that a remedy is given by statute to recover damages therefor; that if separate actions are brought different juries may acquit all the defendants, and thus the plaintiff be defeated, although his right to recover be unquestioned. Where, therefore, such embarrassments are likely to arise upon the trial, and bearing in mind that the plaintiff is without fault and is entitled to recover—at least we must so consider in the discussion of this question—is not the plaintiff who has thus suffered the wrong entitled to a remedy, and that the difficulties and dangers are to be thrown upon those presumably in the wrong rather than upon him who was not in fault? If in either view injustice is likely to be done, should not the defendants assume or be charged with the risk? Is there, however, likely to be any injustice done in holding them jointly liable? I think not. The facts are likely to be fully brought out on such a trial; neither will be interested in keeping back anything tending to show that it was the other alone that was in fault, and we cannot assume that any wilfully false evidence will be given in the case. The facts are quite likely, therefore, to be fully presented to the jury, who can place the responsibility where it rightfully belongs, either by holding both liable, or holding one party liable and acquitting the other.

An act wrongfully done by the joint agency or co-operation of several persons will render them liable jointly or severally. The injury done in this case resulted from a collision caused by the contemporaneous act of two separate wrong-doers, who, though not acting in concert, yet by their

simultaneous wrongful acts put in motion the agencies which together caused a single injury; and for this the injured party could receive but a single compensation. "It is the fact that they all united in the wrongful act, or set on foot or put in motion the agency by which it was committed, that renders them jointly liable to the person injured. Whether the act was done by the procurement of one person or of many, and, if by many, whether they acted with a common purpose and design in which they all shared, or from separate and distinct motives, and without any knowledge of the intentions of each other, the nature of the injury is not in any degree changed, or the damages increased which the party injured has a right to recover." *Stone v. Dickinson* 5 Allen 31.

In *Colegrove v. New York etc. R. R.* 20 N. Y. 492, it was held that a passenger injured by a collision resulting from the concurrent negligence of two railroad corporations could maintain a joint action against both. *Cooper v. E. T. Co.* 75 N. Y. 116, was a case where death had resulted from a collision by two vessels, and an action against both jointly was maintained. In my opinion this action may be maintained against the owners of both vessels. *Hillman v. Newington* 57 Cal. —— : 23 Alb. Law J. 294.

It was next insisted that the case made by the plaintiff showed no fault or negligence on the part of the owners of the Mamie that would justify a verdict against them. The rule must now be considered as settled in this State that where the evidence tends to make out a case for the plaintiff, the force and effect thereof must be submitted to the jury, and that this court will not attempt to review or weigh it.

In a case like the present it would be dangerous in the extreme for this court to attempt to find the facts or to draw inferences from facts proven, or to attempt to say what might be considered an act of negligence or sufficient evidence thereof. In our opinion the case upon this point should have been submitted to the jury, and in view of the fact that there must be a new trial, it is better that this

court should not enter upon a discussion of the facts which lead us to this conclusion.

It was also urged that this case came within the Limited Liability act of Congress and that the defendants, owners of the Mamie, were not personally liable. The learned judge before whom this cause was tried held that the Mamie did not fall within the provision of the United States statutes, citing in support thereof *Am. T. Co. v. Moore* 5 Mich. 368, and *The Mamie* 5 Fed. Rep. 813. We are of opinion that these cases fully covered this question, and that the view taken by the court below upon this point was correct.

As we have thus passed upon all the material questions raised, and are of opinion that the court erred upon the questions designated, the judgment will be reversed with costs and a new trial ordered.

The other Justice concurred.