**James MICHIE et al., Plaintiffs-Appellees,**

v.

**GREAT LAKES STEEL DIVISION, NATIONAL STEEL CORPORATION, et al., Defendants-Appellants.**

**Nos. 73–1405, 73–1406.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 4, 1973.

Decided April 4, 1974.

Leslie W. Fleming, on brief, Detroit, Mich., for Allied Chemical Corp.

Richard Ford, Detroit, Mich., for Detroit Edison Co.

Thorp, Reed & Armstrong, by Kenneth G. Jackson, Peter G. Veeder, Frank J. Clements, Pittsburgh, Pa., Hill, Lewis, Adams, Goodrich & Tait, by Douglas H. West, Alexander, Buchanan & Seavitt, by Robert J. Stowe, Detroit, Mich., for Great Lakes Steel Div., National Steel Corp.

Donnelly W. Hadden, Detroit, Mich., for appellees; Ripple & Chambers, Detroit, Mich., on brief.

Before EDWARDS and CELEBREZZE, Circuit Judges, and KRUPANSKY,* District Judge.

EDWARDS, Circuit Judge.

This is an interlocutory appeal from a District Judge's denial of a motion to dismiss filed by three corporations which are defendants-appellants herein. The District Court certified that the appeal presented a controlling issue of law and this court granted leave to appeal under 28 U.S.C. § 1292(b) (1970).

Appellants' motion to dismiss was based upon the contention that each plaintiff individually had failed to meet the requirement of a $10,000 amount in controversy for diversity jurisdiction set forth in 28 U.S.C. § 1332 (1970).[1]

---

* The Honorable Robert B. Krupansky, United States District Judge for the Northern District of Ohio, sitting by designation.

[1]  28 U.S.C. § 1332 provides:
"(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—
*    *    *    *    *
(2) citizens of a State, and foreign states or citizens or subjects thereof; and
.  .  .  .  . "

The facts in this matter, as alleged in the pleadings, are somewhat unique. Thirty-seven persons, members of thirteen families residing near LaSalle, Ontario, Canada, have filed a complaint against three corporations which operate seven plants in the United States immediately across the Detroit River from Canada. Plaintiffs claim that pollutants emitted by plants of defendants are noxious in character and that their discharge in the ambient air violates various municipal and state ordinances and laws. They assert that the discharges represent a nuisance and that the pollutants are carried by air currents onto their premises in Canada, thereby damaging their persons and property. Each plaintiff individually claims damages ranging from $11,000 to $35,000 from all three corporate defendants jointly and severally. There is, however, no assertion of joint action or conspiracy on the part of defendants.

Additionally, plaintiffs jointly seek $1,000,000 from each defendant, presumably as exemplary or punitive damages, because the nuisance complained of was "wilful and wanton."

This action was originally brought as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure but when defendants filed a motion to dismiss the class action aspect of the case, plaintiffs conceded the motion and were allowed to substitute allegations of permissive joinder under Rule 20(a) of the Federal Rules of Civil Procedure. *See* Zahn v. International Paper Co., 414 U. S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973).

We believe the principal question presented by this appeal may be phrased thus: Under the law of the State of Michigan, may multiple defendants, whose independent actions of allegedly discharging pollutants into the ambient air thereby allegedly create a nuisance, be jointly and severally liable to multiple plaintiffs for numerous individual injuries which plaintiffs claim to have sustained as a result of said actions, where said pollutants mix in the air so that their separate effects in creating the individual injuries are impossible to analyze.

Appellants argue that the law applicable is that of the State of Michigan and that Michigan law does not allow for joint and several liability on the part of persons charged with maintaining a nuisance. They cite and rely on an old Michigan case. Robinson v. Baugh, 31 Mich. 290 (1875). They also quote and rely upon Restatement of Torts (First) § 881:

> "Where two or more persons, each acting independently, create or maintain a situation which is a tortious invasion of a landowner's interest in the use and enjoyment of land by interfering with his quiet, light, air or flowing water, each is liable only for such proportion of the harm caused to the land or of the loss of enjoyment of it by the owner as his contribution to the harm bears to the total harm."

They also rely upon the comment under § 881:

> "The rule stated in this Section is applicable whether or not there has been a physical or chemical union of materials and whether or not fumes or polluted matter sent out by the defendant have united with those sent out by others before entry upon the plaintiff's land, since the unity of the means by which the harm is caused does not prevent recovery."

*See also* 1 T. Cooley, Torts § 86 (4th ed. 1932).

Appellees rely strongly upon the opinion of the District Judge in denying the motion to dismiss:

> This court is of the view that this is not the state of the law in Michigan with respect to air pollution. In the absence of any Michigan cases on point, analogous Michigan cases in the automobile negligence area involving questions of joint liability after the simultaneous impact of vehicles and resultant injuries, are instructive.
>
> In Watts v. Smith, 375 Mich. 120, 134 N.W.2d 194, quoting Meier v.

Holt, 347 Mich. 430, 80 N.W.2d 207, the Michigan Supreme Court said:

> "Although it is not always definitely so stated the rule seems to have become generally established that, although there is no concert of action between tort feasors, if the cumulative effects of their acts is a single indivisible injury which it cannot certainly be said would have resulted but for the concurrence of such acts, the actors are to be held liable as joint tort feasors."

In Maddux v. Donaldson, 362 Mich. 425, [108 N.W.2d 33] the Michigan Supreme Court cites Landers v. East Texas Salt Water Disposal Company, 151 Tex. 251, 248 S.W.2d 731, a pollution case, in support of the above stated proposition. The court indicated that

> ". . . [i]t is clear that there is a manifest unfairness in 'putting on the injured party the impossible burden of proving the specific shares of harm done by each. . . . Such results are simply the law's callous dullness to innocent sufferers. One would think that the obvious meanness [sic] of letting wrongdoers go scot free in such cases would cause the courts to think twice and to suspect some fallacy in their rule of law'."

Plaintiffs contend that the *Maddux, id,* and *Watts, supra,* language applies here since there is no possibility of dividing the injuries herein alleged to have occurred and that it is impossible to judge which of the alleged tortfeasors caused what harm.

It is the opinion of this court that the rule of *Maddux, supra,* and *Landers, supra,* cited therein is the better, and applicable rule in this air pollution case.

On this point we affirm the decision of the District Judge. This complaint appears to have been filed under the diversity jurisdiction of the federal courts. All parties have agreed that Michigan law alone controls.[2]

Like most jurisdictions, Michigan has had great difficulty with the problems posed in tort cases by multiple causes for single or indivisible injuries. Meier v. Holt, 347 Mich. 430, 80 N.W.2d 207 (1957); De Witt v. Gerard, 281 Mich. 676, 275 N.W. 729 (1937); DeWitt v. Gerard, 274 Mich. 299, 264 N.W. 379 (1936); Frye v. City of Detroit, 256 Mich. 466, 239 N.W. 886 (1932). *Compare* Watts v. Smith, 375 Mich. 120, 134 N.W.2d 194 (1965); Maddux v. Donaldson, 362 Mich. 425, 108 N.W.2d 33 (1961).

The first four of these cases clearly support the rule of law argued for by appellants. But the last two represent the more recent rule adopted by the Michigan Supreme Court and relied upon by the District Judge.

We believe that the issue was decided in the lengthy consideration given by the Michigan court in the *Maddux* case. There Justice Talbot Smith (now Senior Judge, United States District Court for the Eastern District of Michigan, Southern Division) in an opinion for the court majority (joined by the writer of this opinion) held:

> It is our conclusion that if there is competent testimony, adduced either by plaintiff or defendant, that the injuries are factually and medically separable, and that the liability for all such injuries and damages, or parts thereof, may be allocated with reasonable certainty to the impacts in turn, the jury will be instructed accordingly and mere difficulty in so doing will not relieve the triers of the facts of

2. Arguably there may be a federal common law of nuisance applicable to injuries by pollution of water or air across state boundaries. *See* Illinois v. Milwaukee, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972); Texas v. Pankey, 441 F.2d 236 (10th Cir. 1971). Thus far, however, no case has been decided under federal nuisance doctrine except where the action has been brought by a state.

Clearly, a suit for injunctive relief could have been (but was not) brought under federal environment law. *See* 42 U.S.C. § 1857h–2 (Supp.1973).

this responsibility. This merely follows the general rule that "where the independent concurring acts have caused distinct and separate injuries to the plaintiff, or where some reasonable means of apportioning the damages is evident, the courts generally will not hold the tort-feasors jointly and severally liable."

But if, on the other hand, the triers of the facts conclude that they cannot reasonably make the division of liability between the tort-feasors, this is the point where the road of authority divides. Much ancient authority, not in truth precedent, would say that the case is now over, and that plaintiff shall take nothing. Some modern courts, as well, hold that his is merely the case of the marauding dogs and the helpless sheep relitigated in the setting of a modern highway. The conclusion is erroneous. Such precedents are not apt. When the triers of the facts decide that they cannot make a division of injuries we have, by their own finding, nothing more or less than an indivisible injury, and the precedents as to indivisible injuries will control. They were well summarized in Cooley on Torts in these words: "Where the negligence of two or more persons concur in producing a single, indivisible injury, then such persons are jointly and severally liable, although there was no common duty, common design, or concert action." Maddux v. Donaldson, 362 Mich. 425, 432–433, 108 N.W.2d 33, 36 (1961). (Footnotes omitted.)

The *Maddux* case has been the subject of an extensive annotation wherein the A.L.R. concludes:

American decisions, statutes, and rules of court have modified and liberalized the common-law rule as to joinder of defendants, and although there is apparently no satisfactory general rule as to when various persons acting independently may be joined in a tort action, many jurisdictions evidently would now permit joinder of two or more drivers who were involved in

successive collisions or accidents with a plaintiff or his vehicle. See Am Jur Parties (1st ed §§ 40–43); Am Jur, Negligence (1st ed § 257); Prosser, Torts 2d ed § 46; 1 Harper and James, Torts § 10.1. 100 A.L.R.2d 16, 29 n. 13 (1965).

We recognize, of course, that the *Maddux* and *Watts* cases both involve multiple collisions causing allegedly indivisible injuries. Hence, appellants are free to argue that the rule stated does not necessarily apply to the nuisance category of torts with which we deal here. Indeed, appellants call our attention to what appears to be a contrary rule applicable to nuisance cases referred to in the *Maddux* opinion. Restatement of Torts (First) § 881.

In the latest Restatement, however, both the old and the newer rule are recognized and as the Michigan court held in *Maddux*, the question of whether liability of alleged polluters is joint or several is left to the trier of the facts. Where the injury itself is indivisible, the judge or jury must determine whether or not it is practicable to apportion the harm among the tortfeasors. If not, the entire liability may be imposed upon one (or several) tortfeasors subject, of course, to subsequent right of contribution among the joint offenders.

Perhaps the best summary of the rationale for such a rule is found in Harper and James:

In the earlier discussion of the substantive liability of joint tort-feasors and independent concurring wrongdoers who have produced indivisible harm it was indicated that there were four categories into which these parties may be placed: situations in which (1) the actors knowingly join in the performance of the tortious act or acts; (2) the actors fail to perform a common duty owed to the plaintiff; (3) there is a special relationship between the parties (e. g., master and servant or joint entrepreneurs); (4) although there is no concerted action nevertheless the inde-

pendent acts of several actors concur to produce indivisible harmful consequences.

\* \* \* \* \* \*

While the Restatement of Torts contains a short and apparently simple statement of the rule in category four, this type of situation has caused a great deal of disagreement in the courts. Here joint and several liability is sometimes imposed for the harm caused by the independent concurring acts of a number of persons. In all the situations in which such recovery is permitted the court must find first that the harm for which the plaintiff seeks damages is "indivisible." This can mean that the harm is not even theoretically divisible (as death or total destruction of a building) or that the harm, while theoretically divisible, is single in a practical sense so far as the plaintiff's ability to apportion it among the wrongdoers is concerned (as where a stream is polluted as a result of refuse from several factories). In the first type of case almost uniformly courts will permit entire recovery from any or all defendants. There is conflict, however, in the second situation, with some well-reasoned recent cases recognizing that the plaintiff's right to recover for his harm should not depend on his ability to apportion the damage but that this is a problem which is properly left with the defendants themselves. 1 F. Harper & F. James, The Law of Torts § 10.1 at 697–98, 701–02. (1956) (Footnotes omitted.)

The text continues with a detailed discussion of Landers v. East Texas Salt Water Disposal Co., 151 Tex. 251, 248 S.W.2d 731 (1952), cited by the Michigan Supreme Court in the *Maddux* case and relied upon by the District Court in the instant case. *See* 1 F. Harper & F. James, The Law of Torts, *supra* at 708–09.

Assuming plaintiffs in this case prove injury and liability as to several tortfeasors, the net effect of Michigan's new rule is to shift the burden of proof as to which one was responsible and to what degree from the injured party to the wrongdoers. The injustice of the old rule is vividly illustrated in an early Michigan case, Frye v. City of Detroit, 256 Mich. 466, 239 N.W. 886 (1932). There a pedestrian was struck by an automobile, thrown in the path of a street car and struck again. Since his widow could not establish which impact killed him, a verdict was directed against her case.

Since our instant case has not been tried, we do not speculate about what the facts may show, either as to injury or liability. But it is obvious from the briefs that appellant corporations intend to make the defense that if there was injury, other corporations, persons and instrumentalities contributed to the pollution of the ambient air so as to make it impossible to prove whose emissions did what damage to plaintiffs' persons or homes. Like the District Judge, we see a close analogy between this situation and the *Maddux* case. We believe the Michigan Supreme Court would do so likewise.

In this diversity case Michigan law is not finally and conclusively declared. The District Judge, under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), had to seek to establish what the Supreme Court of Michigan would do with this case on the basis of what it has already decided. Like the District Judge, we believe that the Michigan courts would apply the *Maddux* principles to the case at bar. Under *Maddux*, each plaintiff's complaint should be read as alleging $11,000 or more in damages against each defendant.[3] Therefore, the principle of Zahn v. International Paper Co., 414 U. S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511

---

3. Michigan law, of course, does not allow collection of the judgment more than once. Maddux v. Donaldson, 362 Mich. 425, 451, 108 N.W.2d 33 (1961) (Black, J., concur-

ring). It also allows for the joint defendant who pays the judgment to seek contribution from his joint tortfeasors. Mich.Comp.Laws Ann. § 600.2925 (1967).

(1973), which would disallow aggregation of plaintiffs' claims for the purpose of establishing diversity jurisdiction, does not apply to this case.

■ As to plaintiffs' second count which purports to state a joint $1,000,000 punitive damage claim against all three defendants, we believe that no facts are pled which establish a joint right to punitive damages under Michigan law. On remand plaintiffs may amend to make such claims individually. Poledna v. Bendix Aviation Corp., 360 Mich. 129, 103 N.W.2d 789 (1960).

As modified, the judgment of the District Court is affirmed.